JOHN K. CARLTON and others, in equity,

*vs.*

THE ROCKPORT ICE COMPANY.

Knox.    Opinion December 22, 1885.

*False representations.    Equity.    Equity practice.*

Complainants sold to defendant an ice house privilege worth, besides better-ments on it, about one thousand dollars for fifty dollars; defendant's agent represented to owners that the property had been sold for taxes, and he thought it could not be regained, that there were no buildings on it, and that it was valueless; there were buildings on it, but not belonging to the land, and there was a tax-title upon it, though not valid; the defendant recovered the land under the deed from complainants by a litigation costing them more than half the value of the land, and was obliged to purchase the betterments; the father of all the complainants but one, (his widow,) and the title was inherited from him, had for nearly twenty years, to their knowledge, abandoned the property, receiving no rents nor paying taxes; complainants could have visited the property in a day, and could have inquired about it at any time by telegraphic communication; another person had approached them to sell the property; and they were some days deliberating before a sale was made to the defendant.

*Held,* in a bill in equity brought to cancel the deed because of the alleged fraud, that the representations, excepting the statement that there were no buildings on the land, being unaccompanied by any circumstance or fact, were merely expressions of opinion concerning the property.

*Held further,* that it is not satisfactorily proved that the complainants were induced by the defendant's representations to sell the property; they sold upon their own knowledge of the property and its situation, being unwilling to attempt to rescue the property through an uncertain and costly law suit.

In equity, a finding is not set aside for the improper rejection or reception of testimony, if the full court decides upon the whole facts that the verdict or decree below is satisfactory.

ON EXCEPTIONS.

*Baker, Baker and Cornish,* and *G. H. M. Barrett,* for the plaintiffs.

*A. P. Gould,* for the defendant.

PETERS, C. J.    The complainants seek to have a deed canceled which they gave to the defendants, conveying an ice house

privilege in Camden ; averring that the conveyance was obtained from them for an inadequate price by fraudulent representations. Three points are presented : *First :* To what extent were there fraudulent representations ? *Second :* Did such representations induce the trade ? *Third :* How great was the inadequacy of price ?

The first and last points are not, at most, very conspicuously sustained by the evidence ; and the weakness of these ingredients of the complainants' case, naturally affects the weight of the evidence bearing on the second point, which we think is not sufficient to uphold the bill.

The untrue representations, alleged to have been made by an agent of the defendants, are, that the property had been sold for taxes, and could not be regained ; that there were no buildings on the same ; that it was a poor location, in a bad condition, and of no value in itself. How much of this was untrue and actionable, if said? Defendants deny that it was said. The land had been sold for taxes, as represented. Whether it could be regained or not, was largely a matter of opinion or of law ; not a fact was stated why it could not be regained. The representations of poor location, bad condition, and of no value, when spoken of merely the land, were of the nature of expressions of opinion, with no argument, explanation or fact adduced at the time to support them. (See *State* v. *Paul*, 69 Maine, 217.) The statement that there were no buildings was not literally true ; there were none which belonged to the complainants. The remark, although perhaps not very harmful, had some importance. The land would probably be worth more with buildings on than with buildings off, even though not belonging to the land owner. The trade was no doubt an improvident one for the complainants.

But were they, while exercising a fair degree of care for themselves, deceived into the trade by such assurances of the defendants' agent? Upon this branch of the case the proof is not sufficient. The burden is upon the complainants. They were sellers and not purchasers. The consideration offered was small and not tempting. They are intelligent persons and of mature years — six in all. What one could not see, another could

suggest. They knew where and substantially what the property was. A half day's time and a small expense would have afforded. personal examination. They were several days engaged in the negotiation, and the deed was not completed and forwarded for several days afterwards, — giving ample time for written or telegraphic communication. It is idle to say that they placed. reliance on a statement that the property was utterly valueless, when the agent was willing to pay something for it and was. urgent to buy. They knew also that another party had previously applied to them to sell.

What did induce them to sell? Was it not their own knowledge of the history of the property? They had often heard John K. Carleton, under whom they were owners as heirs and widow, speak of the property — he not forgetting it on his death bed. They were aware that for many years it had been virtually abandoned by him — that no rents were received or taxes paid. They were informed in relation to the ill success of prior experiments with the privilege. They neglected all care of the property after the decease of the senior Carleton, who died in Boston in March, 1873, not even including it in the inventory of his estate, conveying to the defendants in September, 1877. They knew that they could sue to recover the property from its illegal possessors as well as the defendants could, and. one of them as much as said so to the purchaser. They knew that the persons in possession claimed to own the land, and that. it would be an expensive thing to attempt to recover it. Their conduct after the deed was given indicates satisfaction on their part. For two years no objection appears, although evidently informed about the property fully, soon after giving the deed. During that period, they in several ways assisted the defendants. in their former suit instituted to recover the property — one of them writing what they had done and would do in that behalf, and expressing a hope that their grantees would " come out victorious. "

After victory came, however, they were induced by a person associated in the defense of the former litigation, to commence this suit, without any risk or expense to themselves whatever. Their only interest in the speculation will be the sum of three

hundred dollars, one hundred having been already paid to them. Shall this bill be sustained to produce $300 to them, and to give the balance of the value of the property to one who seeks to obtain it through a litigation tainted by champerty?

As bearing further on that question a word or two should not be omitted upon the point of inadequacy of consideration. Call the land worth $1000, and defendants' witnesses estimate it as worth less. The price paid was $50. The defendants found that the deed under which the sellers claimed was not recorded. They gave $100 for another title, afterwards obtaining the unrecorded deed at some expense. They waged a suit against the person in possession, who claimed in several ways to represent the title. They gained the land by paying for the betterments. But for the superior opportunities which they had of discovering ancient facts pertaining to the property, perhaps the defendants in that action would have prevailed on his plea of title by disseizin. A facetious writer says of a lawsuit, nothing is certain but the expense. The expenses there to those defendants were six or seven hundred dollars; they estimate them more. A lawsuit was indispensable to remove a cloud from the title.

A bill of exceptions was allowed to rulings admitting and rejecting evidence. The briefs of counsel make no allusion to the questions reserved. If not waived, they are immaterial. In equity, a finding is not set aside for the improper reception or rejection of testimony, if the full court decides upon the whole facts that the verdict or decree below is satisfactory. *Larrabee v. Grant*, 70 Maine, 79.

*Decree below affirmed with costs.*

WALTON, VIRGIN, LIBBEY, FOSTER and HASKELL, JJ., concurred.